UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00096-FDW

| | |
|---|---|
| TAMMY E. HAMMOND, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendants. | ) ) ) |

ORDER

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 11) and Defendant's Motion for Summary Judgment (Doc. No. 15). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits under 42 U.S.C. § 405(g)[1]. For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED. Accordingly, the Commissioner's decision is AFFIRMED.

I. BACKGROUND

The procedural history of this case is undisputed. Tammy E. Hammond ("Plaintiff") filed an application for disability and disability insurance benefits on August 26, 2013, alleging disability since December 31, 2011. (Tr. 19.) Plaintiff's application was initially denied on December 6, 2013, (Tr. 157), and denied again at reconsideration on April 21, 2014. (Tr. 172, 180.) Thomas filed a request for hearing and on June 5, 2014. (Tr. 190.) Administrative Law

---
[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405.

1

Judge Randall D. Huggins ("ALJ") conducted the hearing in Charlotte, North Carolina, on May 18, 2016. (Tr. 37.) The ALJ denied Thomas' application in a written decision dated June 7, 2016. (Tr. 16.)

In reaching his decision, the ALJ used the five-step sequential evaluation process for the evaluation of claims for disability under the Act. (Tr. 30-39); 20 C.F.R. § 404.1520(a)(4). On step one of the process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, December 31, 2011, and the date Plaintiff's insured status expired, December 31, 2016. (Tr. 21.) At step two, the ALJ found Plaintiff had the following severe impairments: arthritis with left knee pain; insulin dependent diabetes mellitus with symptoms of edema and neuropathy; depression; anxiety; and high blood pressure. (Tr. 21.) At step three, the ALJ found Plaintiff did "not have an impairment or combination of impairments" that met or medically equaled any of the Listings. (Tr. 22.)

The ALJ determined Plaintiff, despite her impairments, could perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) and explained her residual functional capacity ("RFC") as follows:

> I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except limited to occasional pushing/pulling with left lower extremity, to the extent she can lift and/or carry; use ramps and stairs occasionally; never use ladders, ropes, scaffolds; occasionally stoop, kneel, crouch, and crawl; limited to frequent handling and fingering bilaterally; must be permitted to change position from sitting and/or standing one time each hour; avoid concentrated exposure to unprotected heights and moving mechanical parts; limited to simple work-related instructions and directions; limited to simple routine tasks but not at a production rate pace, e.g., assembly line work; limited to occasional contact with supervisors and the public; and capable of responding appropriately to routine changes in an unskilled work setting.

(Tr. 24.) Also, at step four the ALJ found Plaintiff could no longer perform any of her past relevant work. (Tr. 29.) At step five, the ALJ determined that in light of Plaintiff's RFC, age, education, work experience, and the Vocational Expert's ("VE") testimony, Plaintiff could perform jobs existing in significant numbers in the national economy. (Tr. 30.) The ALJ issued a decision that Plaintiff was not disabled under the Act. (Tr. 31.)

On December 16, 2016, the Appeals Council denied Plaintiff's request to review of the hearing decision. (Tr. 1.) Therefore, the ALJ's decision dated June 7, 2016, became the final decision of the Commissioner. Plaintiff then brought the instant suit before this Court to challenge the Commissioner's decision, and this case is now ripe for judicial review pursuant to Section 205(g) of the Act, 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

Here, Plaintiff presents two arguments purporting to show error in Defendant's decision: error in the RFC analysis, as well as in the ALJ's reliance on the VE testimony. When reviewing a Social Security disability determination, a reviewing court must "uphold the determination when an [Administrative Law Judge ("ALJ")] has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). In reviewing the record for substantial evidence, the Court does "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute

3

our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (brackets, citation, and internal quotation marks omitted).

In considering an application for disability benefits, an ALJ uses a five-step sequential process to evaluate the disability claim. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016). "Satisfying step 3 warrants an automatic finding of disability, and relieves the decision maker from proceeding to steps 4 and 5." Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 659 (4th Cir. 2017) (citing 42 U.S.C. § 404.1520(d); see also Sullivan v. Zebley, 493 U.S. 521, 532 (1990)).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four." Lewis, 858 F.3d at 861. Here, the ALJ assesses the claimant's RFC to determine what is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. Id. § 416.945(a)(1); § 404.1520(a)(4)(iv).

> In making this assessment, the ALJ must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-

> by-function basis, including the functions' listed in the regulations. Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work.

Monroe, 826 F.3d at 179 (citations and quotations omitted). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862. It is well-settled law that the ALJ must "show your work" in the RFC analysis. Patterson, 846 F.3d at 663 (holding the ALJ's lack of explanation regarding the plaintiff's severe mental impairments requires remand).

After assessing the claimant's RFC, the ALJ continues with the fourth step, where the claimant must establish she is unable to perform past work. Lewis, 858 F.3d at 862; Mascio, 780 F.3d at 635. If the claimant meets her burden as to past work at step four, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional

capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862 (citations and quotations omitted). If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

Plaintiff asserts two assignments of error in Defendant's disability decision: (1) the ALJ did not give a complete function-by-function analysis of Plaintiff's mental functioning, thus failing to make a complete finding as to Plaintiff's RFC; and (2) the ALJ failed to obtain an explanation from the vocation witness for testimony that allegedly conflicts with the Dictionary of Occupational Titles ("DOT"). (Doc. No. 12, pp. 4-5.) The Court addresses these in turn.

**A.    Plaintiff's RFC**

Plaintiff spends the bulk of her argument asserting the ALJ failed to consider all of Plaintiff's impairments, including severe and non-severe, when determining her RFC. Specifically, Plaintiff contends the ALJ's RFC failed to adequately assess Plaintiff's mild limitations on her activities of daily living; moderate difficulties in maintaining social functions; and moderate difficulties in maintaining concentration, persistence or pace. Plaintiff contends that Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), supports remand here.

In Mascio, the Fourth Circuit held that remand may be appropriate where "'an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)); Reinhardt, 2015 WL at *3 ("... Mascio clearly imposes on the Commissioner a duty to explain why such

6

mild mental health impairments found at step two do not translate into work-related limitations when plaintiff's RFC for work is considered."). In response, Defendant contends the ALJ provided sufficient explanation for his RFC finding, which is consistent with the Mascio requirements. The Court agrees with Defendant.

In step two, the ALJ noted Plaintiff's mental limitations and explained why each limitation was mild or moderate, including a discussion of the evidence supporting those determinations. Substantial evidence before the ALJ supports the conclusion that Plaintiff's activity level was inconsistent with a severe mental impairment, including evidence that Plaintiff maintains a household, takes care of her personal needs and her disabled son, handles finances, interacts with her local family members, shops, and is able to go out alone. (Tr. 23.) The ALJ also explained Plaintiff's difficulties following a sitcom on television, as well as her anxiety episodes resulting from confrontational interactions, "people talking bad about others, and stress around people." (Tr. 23.) The ALJ noted, "Records of mental status examination show the claimant has fair attention and concentration, fair insight and judgment, and recent and remote memory are grossly intact." (Tr. 23.)

Plaintiff's argument that the ALJ's limitations in the RFC analysis fail to explain her ability to stay on task is meritless. The ALJ's restrictions in the RFC and subsequent hypothetical question to the VE "reasonably related to a moderate limitation in Plaintiff's ability to stay on task," Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.).

> *[T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction adopted in this case sufficiently accounts for [the p]laintiff's moderate limitation in CPP.* Moreover, that approach makes sense. In Mascio, the Fourth

> Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task." Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," see 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, *Mascio does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits*.

Grant, 2016 WL 4007606, at *9 (emphasis added); see also Bryan-Tharpe v. Colvin, No. 1:15CV00272, 2016 WL 4079532, at *7 (M.D.N.C. July 29, 2016), report and recommendation adopted sub nom. Bryan-Tharpe v. Berryhill, No. 1:15CV272, 2017 WL 980324 (M.D.N.C. Mar. 14, 2017) ("[T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction adopted in this case sufficiently accounts for Plaintiff's moderate limitation in CPP." (collecting cases)). In Bryan-Tharpe, the court held, "Where, as here, the ALJ has included a specific restriction that facially addresses 'moderate' (not "marked" or "extreme," see 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to non-production work, Mascio does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." 2016 WL 4079532, at *7.

The Court adopts the reasoning from the cases above, as well as others similarly interpreting Mascio,[2] and concludes that, here, the ALJ sufficiently explained Plaintiff's ability to

---

[2] See also Scott v. Berryhill, No. 1:16CV48, 2017 WL 500000, at *6 (M.D.N.C. Feb. 7, 2017) (holding the ALJ reasonably accounted for the plaintiff's moderate deficit in concentration, persistence, or pace in compliance with Mascio because "the ALJ's restriction of Plaintiff to 'a low stress work setting, which, in addition to the nature of the work being performed, is further defined to mean no production-pace or quota-based work, rather a goal-oriented job

stay on task and accounted for such ability in the RFC restricting Plaintiff to "simple routine tasks but not at a production rate pace." (Tr. 24.) Furthermore, the RFC limitations are supported by substantial evidence. Subsequently and *throughout* the ALJ's RFC analysis, the ALJ explained these limitations. In fact, the ALJ went into great detail in summarizing the physician's notes upon which he relied, including records from the CMC Behavioral Health Center discussing Plaintiff's mental health treatment. (Tr. 24-29.)

The Court also rejects Plaintiff's argument that the ALJ failed to adequately explain why the RFC does not limit Plaintiff to a "non[-]confrontational supervisor." (Doc. No 12, p. 10.) To the contrary, the ALJ addressed the record evidence regarding Plaintiff's difficulties in dealing with others and gave "some weight" to the state agency consultant's opinion that Plaintiff "may benefit from working with a nonconfrontational supervisor." (Tr. 29, 107.) This explanation supports the ALJ's limitation to "occasional contact with supervisors" in the RFC. To the extent Plaintiff's arguments essentially ask this Court to reweigh the evidence and credibility of the testimony, such task is not for this Court. Hancock , 667 F.3d 470, 472 (4th Cir. 2012) ("'[W]e do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.'" (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)).

Accordingly, the ALJ explicitly considered and reasonably accounted for Plaintiff's mental limitations in the RFC as required by Mascio. This assignment of error is overruled.

---

primarily dealing with things as opposed to people, with no more than occasional work with the public as a component of the job, and no more than occasional changes in the work setting'"); Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, where ALJ relied on the claimant's daily activities and treating physicians' opinions of claimant's mental abilities);

**B.     Vocational Expert Testimony**

Next, Plaintiff asserts the ALJ erred in relying on VE testimony that conflicted with the DOT. Specifically, Plaintiff points to the credibility of the VE's testimony and argues the ALJ failed to ask the VE for the basis for her testimony. The ALJ concluded:

> [T]he undersigned finds the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupation Titles and its companion publication the [Selected Characteristics of Occupations]. However, the portions of the vocation expert testimony not addressed by DOT regarding the number of breaks and the number of absences per month were based on her professional training, experience, research, data review and literature review. The undersigned fully credits and accepts the foregoing testimony based on the vocational expert's reasoning and her qualifications.

(Tr. 30-31.) Aside from the fact Plaintiff's argument erroneously seeks a credibility determination by the Court, the ALJ's explanation for reliance on the VE testimony is supported by substantial evidence in the record. (See Tr. 66-67.) Recently, another district court in South Carolina summarized the applicable case law in the Fourth Circuit on this issue:

> Plaintiff also argues a conflict exists between the VE's testimony and the DOT because the limitation to follow simple work-related instructions is incompatible with the identified jobs' reasoning level of "2." Under the record in this case, the Court is unpersuaded. (See Tr. 68-69.) At the fifth step in the sequential evaluation process, "the Commissioner bears the burden to prove that the claimant is able to perform alternative work." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015), citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). In assessing the claimant's ability to perform other jobs existing in significant numbers in the national economy, the ALJ should take administrative notice of job information contained in the DOT. 20 C.F.R. § 404.1566(d) and § 416.966(d); see also SSR 00-4p (providing that "we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy"). In some cases, ALJs obtain testimony from VEs to address how certain restrictions affect claimants' abilities to perform specific jobs. 20 C.F.R. § 404.1566(e) and § 416.966(e).
>
> Recognizing that VEs' opinions sometimes conflict with the information in the DOT, the SSA promulgated SSR 00-4p to explain how these conflicts should be resolved. The Fourth Circuit recently explained that the "purpose" of SSR 00-

> 4p "is to require the ALJ (not the vocational expert) to '[i]dentify and obtain a reasonable explanation' for conflicts between the vocational expert's testimony and the Dictionary, and to '[e]xplain in the determination or decision how any conflict that has been identified was resolved.'" Pearson, 810 F.3d at 208, citing SSR 00-4p (emphasis in original). The court noted that SSR 00-4p sets forth two independent responsibilities. Id. "First, the ALJ must '[a]sk the [vocational expert] . . . if the evidence he or she has provided conflicts with the information provided in the [Dictionary]'; and second, '[i]f the [vocational expert]'s ... evidence appears to conflict with the [Dictionary],' the ALJ must 'obtain a reasonable explanation for the apparent conflict.5'" Id. at 208, citing SSR 00-4p. "SSR 00-4p directs the ALJ to 'resolve the conflict by determining if the explanation given by the [expert] is reasonable'" and "to 'explain the resolution of the conflict irrespective of how the conflict was identified.'" Id. at 208, citing SSR 00-4p (emphasis in original). Thus, "[t]he ALJ independently must identify conflicts between the expert's testimony and the Dictionary." Id. at 209. Furthermore, "an ALJ has not fully developed the record if it contains an unresolved conflict between the VE's testimony and the DOT" and "an ALJ errs if he ignores an apparent conflict on the basis that the VE testified that no conflict existed." Henderson, 643 Fed.Appx. at 277, citing Pearson, 810 F.3d at 210.

Watts v. Berryhill, No. CV 1:17-127-RMG-SVH, 2017 WL 4325685, at *11 (D.S.C. Sept. 12, 2017), report and recommendation adopted sub nom. Watts v. Berrryhill, No. CV 2:17-127-RMG, 2017 WL 4296722 (D.S.C. Sept. 26, 2017).

> Unlike GED Reasoning Code 1, which requires the ability to "[a]pply commonsense understanding to carry out simple one-or two-step instructions", GED Reasoning Code 2 requires the employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Dictionary of Occupational Titles, 1991 WL 688702 (2008); see also Rounds v. Comm'r, 807 F.3d 996, 1003 (9th Cir. 2015) (holding that reasoning code 2 requires additional reasoning and understanding above the ability to complete one-to-two step tasks).

Henderson v. Colvin, 643 F. App'x 273, 267-77 (4th Cir. 2016). Here, the ALJ did not limit Plaintiff to only "one-or two-step instructions," id., and instead limited her to "simple, work-related instructions and directions . . . simple, routine tasks, but not at a production pace" in both the RFC and the hypothetical to the VE. Plaintiff has failed to show how this is a conflict with the Reasoning Level 2, which requires "the commonsense understanding to carry out details but

11

uninvolved written or oral instructions." Id. (citation omitted). Without a showing of an apparent conflict, the ALJ's reliance on the VE's testimony was proper.[3] Plaintiff's assignment of error is overruled.

### IV. CONCLUSION

In reviewing all assignments of error by Plaintiff, the Court concludes the ALJ's decision sufficiently explains the basis for the decision and is supported by substantial evidence.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED, Defendant's Motion for Summary Judgment (Doc. No. 13) is GRANTED, and the Commissioner's decision is AFFIRMED for the reasons stated herein.

IT IS SO ORDERED.

Signed: March 23, 2018

Frank D. Whitney
Chief United States District Judge

---

[3] See Roundtree v. Berryhill, No. 4:15-CV-00154-F, 2017 WL 398368, at *3 (E.D.N.C. Jan. 30, 2017) ("Plaintiff relies on Henderson v. Colvin, 643 Fed. Appx. 273 (4th Cir. 2016) (unpublished), to support her claim that there was a conflict between the ALJ's RFC finding and DOT Reasoning Code 2. Pl.'s Objections [DE-21] at 3-4. Plaintiff's reliance is misplaced. In Henderson, the Fourth Circuit Court of Appeals concluded that there was an apparent conflict between an RFC limitation to "one-to-two step instructions" and GED Reasoning Code 2. 643 Fed.Appx. at 276-77. The cases are distinguishable. Here, the ALJ did not limit Plaintiff to one-to-two step instructions."); see also Dardozzi v. Colvin, No. SAG-16-20, 2016 WL 6085883, at *5 (D. Md. Oct. 18, 2016) ("Henderson is distinguishable from the instant case because the ALJ did not limit Ms. Dardozzi's RFC to 'one-to-two step instructions, but rather to 'unskilled work.' Unskilled work is defined as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.' 20 C.F.R. § 404.1568. Unskilled work, then, is tantamount to simple, routine tasks.")